**1824.**

Stevens
vs
Richardson

JUDGMENT AFFIRMED.

---

**June (E. S.)** STEVENS *vs.* RICHARDSON.

Under the act of 1786, *ch.* 45, to direct descents, an election by the husband in right of his wife to take her ancestor's land at the valuation of the commissioners, and his executing bonds to the other heirs for the payment of their respective proportions, vests in him an estate in fee in the whole land elected to be taken, and does not pass any interest whatsoever therein to his wife.

Every election, under the acts to direct descents, to take the whole estate of the ancestor at a valuation, and to pay the other heirs their just proportions of the value in money, and passing bonds therefor, settles in the person electing without a deed from the commissioners, the legal estate in fee in the lands elected to be taken; and there is no difference between an election by a child of the intestate, and an election by a husband in right of his wife, who was a child of the intestate.

In either case the electing party takes as a purchaser, and does not derive his title by descent from the ancestor.

Such an election by a husband in right of his wife, and his giving bonds as before stated, entitles his second wife to dower in the lands elected to be taken.

APPEAL from *Worcester* county court. An action of dower was brought by the appellant, the demandant in the court below, against the appellee, and the following statement submitted to the court for their opinion. *George Richardson* died in the year 1802, seized of the lands and mills mentioned in the demandant's declaration, without making a will, or disposing of them, and leaving the following children, *Betsey, David, Emma, Samuel, Molly* and *Nancy*. A petition was filed in the county court, at May term 1809, for a division of the said lands under the act of 1786, *ch.* 45, to direct descents, and the several supplements thereto. Commissioners were appointed by the court, who made their return that said lands and mills would not admit of division, which return was confirmed by the court. *John Stevens* intermarried with *Betsey*, one of the daughters of the said *George Richardson*, who was the eldest child, entitled to take at the valuation. *John Stevens*, his wife being in full life, came into court and elected, in right of his wife, to take the said lands and mills at their valuation, and to pay to the other heirs

1824.

Stevens
vs
Richardson

their proportion of the valuation money. The respective portions of the valuation were regularly secured to be paid, according to law, by bonds given to the heirs severally. All which bonds have been since paid off except one. Afterwards *Betsey*, the wife of *John Stevens*, died in the year 1810, and after her death in the year 1813, *John Stevens* intermarried with the demandant. *John Stevens* died in 1814, in the possession of said lands and mills, and without receiving a deed for them from the commissioners, leaving the demandant his widow. The question submitted to the court on these facts was, whether *John Stevens* was seized of such an estate during his intermarriage with the demandant as to entitle her to dower? The county court, [*Martin*, Ch. J. and *Robins*, A. J.] gave the following opinion: This case involves many questions, and some of considerable difficulty. It has been asked, could *John Stevens* elect at all in right of his wife? If so, does his election invest the wife with a title in her own share, and himself with the residue? Or does it invest her with a title not only in her dividend but in the whole estate, he acting merely as her representative? Or does he, by his election, become the purchaser of the whole estate, and divest the wife with other heirs altogether of the inheritance? It is in vain we seek for a case analagous in the *English* law; it is a case *sui generis*, and must depend on the construction of the acts of assembly regulating the descent of landed property in this state. The original act of 1786 is silent, as to the husband's electing to take in right of his wife; and it is only by a liberal construction of that act that it is in any way admissible. But we find the practice of his exercising this right has prevailed at a very early period after the passage of the first law, and has been recognized by an act of the legislature as early as 1802, as a subsisting right. To deny it, therefore, at this time, would shake the title of much of the landed property in the country, and be productive of great inconvenience. We feel bound to support it. If then he has this right, in what capacity does he come in? Is he merely the representative of the wife, and electing for her as the party entitled to take as heir? Does he invest her with the whole inheritance? Or does he invest her with a fee in her own dividend only, and become the purchaser himself of the residue? It is certainly contrary to

the policy of that law, from whence we derive our notions of *descent*, to admit any person to come into the inheritance except those of the blood of the ancestor; and by that law the husband would be considered a stranger, and, entitled to no rights as heir, but that derived from the *feme covert* heiress, as her baron; and at first view we would be led to suppose the election of the husband would invest the wife with the whole estate. But from the whole scope of our descent laws, the right of election is personal, and has no respect to what is deemed, in the *English* law, propinquity of blood, except in a few instances. The manifest intent of the act of 1786, when an application is made for a division of an estate, is to render an estate held in common, one in severalty; either by a division, when it is susceptible of it, or by an election, or by a sale of the whole. If the husband's election could invest the wife with a title in her dividend only, and make him the purchaser of the residue, it would defeat the object of the act altogether in facilitating the division of the intestate's estate. A division, made with the effect contemplated, would last only during the coverture. The husband then could not by his election invest the wife with a fee in her dividend of the estate, and become the purchaser in his own right of the residue, nor would it be less reasonable to suppose that the husband's election should invest the wife with the whole inheritance. Suppose the wife's share only one tenth, would any reasonable construction of the acts of assembly admit, that after the husband had paid the value of nine-tenths of the estate the whole would devolve upon the wife, in fee, in exclusion of his own descendants? Yet this case might frequently occur. The first of those positions is so repugnant to the spirit and scope of the acts of assembly on this subject, and the latter so unreasonable, not to say unjust, and the practice under those acts has been uniformly so different, that the court must reject them as totally inadmissible. And we are led to the necessary inference, that the husband, on his election, must take the whole estate as a purchaser. And this involves another question, all important in the discussion of this case, viz. With what kind of an estate was *John Stevens* invested? Has he (by the mere act of electing,) the whole freehold? Or had he only an equitable interest to be consummated by paying the purchase money and obtaining a deed from the com-

1824.

Stevens
vs.
Richardson

missioners? To entitle the wife to dower, a freehold estate in the husband, during the coverture, is indispensable. It is contended, on the part of the plaintiff, that the mere act of election vests in the husband such an estate, and that it has an operation similar to that of a surrender, or a sheriff's sale of lands. The court, after the most mature deliberation they have been able to give this subject, cannot view it in this light. It is true the act of 1786 requires no deed to the heir electing to take; nor are we aware that it is necessary (under any of the acts,) for a party claiming by descent. The whole estate devolves upon all the heirs at law of an intestate, subject to be defeated by an election of one in exclusion of the other heirs. And all the acts of assembly relative to descents, seem to draw a distinction between a person coming in by descent, and a purchaser. In the first no deed seems necessary, in the latter it is indispensable; and by the act of 1802, though it speaks retrospectively, a deed seems to be called for in this very case. It would be attended with great inconvenience if the doctrine was once established, that a purchaser under a commission, or a husband electing in right of his wife, could by parole evidence show a transfer of the freehold. It would be a departure from that precision our law has for ages required in the transmission of real property. We deem it a correct position, that a husband, electing in right of his wife, comes in as a purchaser, and as such cannot be invested with any other than an equitable interest until a deed is ordered by the court, and executed by the commissioners. This case differs materially from the case of *Messex* and *Bloodworth*, decided in *Somerset.* There the husband elected to take the estate as eldest son and heir. There no deed was necessary to consummate the title and seizin of the husband, but here it is indispensable. Upon the whole view of the case, the court are of opinion, that *John Stevens* had only an equitable interest in this estate, and had not such a seizin as would enable his widow to claim her dower. Judgment was therefore entered for the defendant, and the demandant appealed to this court.

The cause was argued before BUCHANAN, EARLE, and STEPHEN, J. by

*Wilson,* for the Appellant.

No counsel appeared for the appellee.

Earle, J. delivered the opinion of the court. This is an action of dower, and we are called on by the case to give a construction to the acts of assembly regulating the law of descents. A decision of any question arising on those acts of the legislature, deeply concerns the landed interest of the country, and is, in every view, of much importance. The one under consideration is peculiarly of this character. We have to decide upon the legal effect of an election made by a husband, in right of his wife, to take the whole estate of her ancestor at the valuation set upon it by the commissioners, and pay to her brothers and sisters their just proportions of the value thereof in money; to determine in fact, whether such election vests in the husband the inheritance in fee in the lands elected to be taken, to the exclusion of his wife; and if it does so vest, whether he is thereby clothed with the legal estate, or only acquires therein an equitable interest to be perfected by the payment of the purchase money, and a conveyance by deed from the commissioners.

These points are raised in a suit by the second wife of *John Stevens,* who elected to take the lands and mills, set forth in her declaration, in right of his former wife. He died in the year 1814, possessed of those lands and mills, but without any other title to them than what he derived by election to take them in right of his first wife, not having fully paid the purchase money, nor obtained a deed for them from the commissioners.

Whether the husband is capable, by his election in right of his wife, to vest the inheritance in fee in the lands elected to be taken in himself, to the exclusion of his wife, is a question on which we cannot at this time permit ourselves to doubt, whatever might have been our sentiments on the point, if we had been invited to act upon it soon after the first act of descents in 1786. The capacity in the husband to do this has been fully recognized by the legislature of the state, by an act passed in the year 1802; and it is believed, that in numberless cases, before and since that law, the courts of justice have every where sanctioned the principle, that the election by the husband, in right of his wife, to take her ancestor's lands at the valuation of the commissioners, vests in him an estate therein in fee. Considering that it would be of serious moment to the community to cast a shade of doubt on this doctrine,

at this late period, this court must decide, that such an election by the husband, in right of his wife, to take the lands of her ancestor, according to their value as ascertained by the commissioners, followed up by his passing bonds to the other heirs for the payment of their just proportions of the value thereof in money, agreeably to the acts of assembly on this subject, vests in him an estate in fee, in the whole land elected to be taken, and does not pass any interest whatsoever therein to his wife.

The further question to be inquired into is, whether the *legal title* to the land, elected to be taken, vests in the husband by the election, or only an *equitable interest*, to become a legal estate on the payment of the purchase money, and obtaining a deed from the commissioners? We hold that every election, under the acts of descents, to take the whole estate of the ancestor at a valuation, and to pay the other heirs their just proportions of the value in money, and passing bonds for the same, settles in the person electing the legal estate in fee in the lands elected by him to be taken; and in this respect we cannot perceive any difference between an election by a child of the intestate, and an election by a husband in right of his wife, who was a child of the intestate. In either case, the electing party takes with his own free consent, and by his own act, as a purchaser, and does not, as was suggested, derive his title by descent from the ancestor; and in both cases, the whole proceedings, from the petition to the election, become like a matter of record, which to future times may test their legal correctness. An election by the child or heir of the intestate has always been thought to pass the legal estate in fee, for it was not until the year 1820, that the legislature empowered the commissioners to convey to him. As to a husband electing in right of his wife, it is true the commissioners were authorised to convey to him the land, elected to be taken, at an earlier period.

The act of 1802, *ch.* 94, *section* 6, was enacted for this purpose, but it is to be observed, that this act has in this respect only a retrospective operation, and from that time, until the year 1820, the commissioners acting under the descent laws, had no power to make any such conveyance to a husband.

The court then must entertain the opinion, that the election of *John Stevens*, in right of his first wife, to take the

1824.

Seegar
vs
The State

lands in question, vested in him, under the circumstances in which it was made, the legal estate in fee in the lands and mills mentioned in the plaintiff's declaration, and that she is entitled to dower in the same. The judgment must be reversed, and a *procedendo* awarded.

JUDGMENT REVERSED, &c.